Staples J.

delivered the opinion of the court.
Every bill for the specific execution of a contract is an application to the sound discretion of the court. It is not a case requiring the interposition of the court ex debito justitice, but rests in their discretion upon all the circumstances. He who seeks the exercise of this extraordinary jurisdiction must show a contract certain and definite in its terms: that he himself is in no default, but has performed his part of the agreement; or in the language of the judges, that he is “ready, desirous, prompt and eager” to do so. If the contract is conditional it must be shown that the conditions have been complied with. "When the condition is subsequent and becomes impossible of performance, equity will sometimes relieve upon compensation being made. But the courts never dispense with *309 ■conditions precedent, because in such case the estate does not vest until the condition is performed. When the party seeking performance, is himself in default whether he can have it depends in a great measure upon how far the default goes to the essence of the contract.
The rule laid down by an eminent writer and supported by abundant authority, is, that when the substance of the agreement can be fully executed, and when a trifling adjustment only is needed to satisfy the equities of the case performance may be decreed with satisfaction. If, however, the default of the plaintiff goes to the substance of the agreement, or if there be some things which he is bound to do and cannot do, or has not done, and the court cannot compel him to do it, equity will not decree specific execution in his favor. 8 Parsons on Contracts 402, 407-'8; Harvey v. Banks, 1 Rand. 408; Pigg v. Corder, 12 Leigh 69.
These principles, as will be seen, have a direct application to the present controversy. Admitting for the present the existence of a valid contract between Enoch Cox and Joseph Cox, it is not denied that it was a conditional contract. By the express terms of the agreement Joseph Cox was to have the land upon condition that he supported Enoch Cox and wife during their respective lives. These were the terms imposed by the father and accepted by the son. The courts have no power to change them or to substitute others in their place. If it be conceded that Joseph Cox furnished the necessary support down to the year 1868, it is very clear that he failed to do so after that year, although Enoch Cox lived until 1867, nearly five years longer. Mrs. Haney Cox the wife, for whose benefit the pension was made equally with that of the husband, was alive when this suit was brought, and is *310 said to be still living. She has received no assistance-from Joseph Cox or his family since 1863; but during all this time she has been dependent upon aid derived from other sources. Joseph Cox went into the army in 1863, and was killed or died in March, 1865. If he was prevented by these causes from complying with his contract, it was his misfortune. The courts cannot dispense with conditions which constitute the essence of the agreement. The default is in the very nature of things incapable of adequate compensation. The suppoi’t to be furnished Enoch Cox and wife did not include meat and clothing merely, but services of a personal character, which the father and mother might well expect and exact from them, and which no doubt constituted one of the main inducements to the arrangement.
It is said, however, that the family of Joseph Cox, after he went into the army and even after his death, were willing and ready to render the necessary support; but they were prevented by Enoch Cox and his wife. At the time of Joseph Cox’s death, in 1865, he had six children, the eldest about fourteen and the youngest about five years of age. It is impossible to believe that this boy of fourteen and his widowed mother, besides taking care of four small children, could have sustained the burden of furnishing a support for this infirm and aged couple. The proposition is too extravagant to be entertained for a moment. Indeed the case as presented by the record, is that of a father promising his son to make a devise in his favor upon certain conditions which have never been complied with. This court is asked to dispense with these conditions, although they constitute the substance of the contract. It is to be remembered that Joseph Cox was never under any obligation to furnish *311 the necessary support for his father and mother. He might have found it to his interest to do so, and had he lived it is possible he would have done so. But he made no contract which bound him to that duty. At least this record shows none such. The entire obligation was upon Enoch Cox’s side. His promise was to devise the land to his son, provided the latter supported him and his wife during their respective lives. Here then is an agreement lacking the essential element of mutuality, binding upon one of the parties and not upon the other. It has been settled by repeated decisions, that in applications for specific performance the remedy must be mutual, and that where a bill will lie for one of the parties it will lie for the other. Courts of equity, as a general rule, will not decree in favor of a plaintiff who is himself not bound by the agreement. It is very true that if Joseph Cox had complied with all the terms and conditions upon which the land was to be devised to him, he or his representatives would be entitled to a decree for specific performance. The vendor having received the full consideration would of course be bound to convey. But where the vendee has not only not performed his part of the agreement, but cannot be compelled so to do upon a bill filed against him, he is clearly not entitled to the aid of a court of equity. He may be entitled to a decree for compensation for the services rendered; but not for specific execution of the contract. Adams’ Equity top page 252, marg. 82; Benedict v. Lynch, 1 John Ch. E. 870.
Thus far the ease has been considered as if there was a valid contract between the parties. It may be doubted, however, whether this contract, or supposed contract, amounts to more than a voluntary promise, an inchoate gift, on the part of Enoch Cox the father. Ho writings were ever executed. The understanding, *312 whatever it may have been, was merely verbal. There was no delivery of possession to Joseph Cox, but father and son remained in joint possession cultivating the land in common and together exercising control of the premises. Although frequently applied to, Enoch Cox always refused to make his son a title to the property, or even to surrender the control to the latter. It may be that in his will he devised the land to Joseph Cox upon the conditions already mentioned. But the fact that he adopted this form of disposition rather than a deed, shows very clearly that he reserved to himself the right of determining whether he would give the land to his son, and under what circumstances he would make the gift. It is very true that representations made by one party and acts done by another upon the faith of such representations may constitute a contract which will be specifically executed; but where the representation is merely of a future intention, as to which the party refuses to bind himself by contract, the engagement must be regarded rather as of an honorary character, and not enforceable as such in a court of equity. As has been well said, “ such a promise or gift in the case of a parent, in its very nature leaves to the donor a locus penitential, a right to change and revoke or modify the gift, a right which the exigencies of his fortune or his family may make it proper for him to exercise.” Taylor v. Staples, 5 Am. R. 556; Rucker v. Abell, 8 B. Mon. R. 566; Pinchard v. Pinchard’s heirs &c., 23 Alab. R. 649; Adamson v. Lamb, 3 Blackf. R. 446.
This court has repeatedly expressed its disapprobation of those .pretended contracts based upon declarations by parents of intentions to make certain specific provision for children, in consideration of supposed services rendered or sacrifices made by the latter. Such promises are generally made in the freedom and *313 confidence of domestic intercourse, and without a suspicion that they constitute legal obligations. The efforts constantly made to enforce them fully vindicate the statute of frauds and perjuries. Reed’s heirs v. Vannorsdale f wife, 2 Leigh 569, Pigg v. Carder, 12 Leigh 69.
I do not deem it necessary further to consider or. discuss the evidence upon this point, as all of us agree it is insufficient to warrant a decree for specific execution. The only question is whether the complainants are entitled to a decree for compensation.
It is in proof that about ten acres of the land were cleared and enclosed by Joseph Cox; some inferior buildings erected by him, and some additions made to those already built. All the work done by him was for his own benefit, and was such as a tenant from .year to year paying rent might have done without compensation. Joseph Cox was in the enjoyment of the farm for fifteen years without rent; he used without restraint his father’s teams in cultivating the land, and it is no exaggeration to say that for every expense he incurred in improvements, or in the support of the father and mother, he was fully remunerated by the rents and profits. This fact is established by complainant’s own witnesses. It seems also that since the death of Joseph Cox, Enoch Cox has conveyed to the widow and children fifty acres, part of the land in controversy. To this tract the buildings erected by Joseph Cox have been removed, and are now in the possession of the family. This would seem to be conclusive upon the question of compensation. Upon the whole, in any view we may take of the case, it would seem that the decree of the Circuit court is clearly ■correct and must be affirmed.
Decree affirmed.