BURKS, J.,
delivered the opinion of the court.
The counsel for the judgment creditors of William Crumpton (appellees), in their brief, complain of alleged errors in the decree of the 16th November, 1871. It is a sufficient answer to say that the appeal allowed in this case does not bring that decree under review. It adjudicates matters wholly between the creditors and defendants other than the appellants. The only decree affecting the interests of the appellants is the decree of the 13th November, 1872, which is the decree appealed from, and the only one to be now examined. For the rule in such cases, see Walker’s ex’or & als. v. Page & als., 21 Gratt. 636, 652, and cases there cited.
The deposition of the appellee, William Crumpton, was twice taken. The one first taken was read at the hearing of the cause without objection or exception.
The objection to it here now for the first time comes too late.
The last deposition was excepted to when taken, by the judgment creditors, on the ground of the alleged incompetency of the witness. If it were excluded altogether, the exclusion wotild not affect the decision on this appeal, as it relates almost entirely to a question with which the appellants have no concern — the title to the lot claimed by the defendants, Una Crumpton and her children and trustee — as to whom the bill was dismissed under the first decree. But it is clear that the witness was not incompetent. Although the transactions *to which he testified be treated as transactions *96 ■which were the subject of investigation in the suit, and Jesse Crumpton, the other party to such transaction was dead, yet he did not testify in his own favor, or “in favor of any other party having an interest adverse” to Jesse Crumpton or those claiming under him. On the contrary, he testified against his own interest, and against the complainants having an interest adverse to Jesse Crumpton. Code of 1873, ch. 172, § 22.
The principles of several recent decisions of this court, reported in 28 Gratt., to-wit: Floyd, trustee, v. Harding & als., 401, 407; Hicks v. Riddick & als., 418; Borst v. Nalle & als., 423, 432, 433; Shipe, Cloud & Co. v. Repass & als., 716, 723, establish the proposition that the lot claimed by the appellants is not subject to the lien of the judgments of the appellees, Ludlam, Heineken & Co., and Taliaferro & Musgrove, jf when these judgments were recovered against William Crumpton, the appellants, or either of them, had a valid, equitable title to said lot.
Whether they had such title, therefore, is the only question to be considered and determined.
The claim of the appellants to the lot in question, at the date of the judgments, was under a parol agreement, and if it were a contract for sale, to take the case out of the operation of the statute of fraud and perjuries and entitle the appellants to specific execution, on the ground of part performance, it is well settled that the agreement and acts of part performance must be clearly proved, and it must appear that the agreement is certain and definite in its terms, that the acts proved in part performance refer to, result from, or were done in pursuance of the agreement proved, and that the agreement has been so far executed that a refusal of full execution would operate a fraud upon the party seeking execution *and place him in a situation which does not lie in compensation. Wright v. Pucket, 22 Gratt. 370.
The appellants, however, do not claim that the agreement was a contract for sale, but a parol gift of the.lot. It becomes important, therefore, to enquire whether, as donees, under the facts and circumstances proved, they occupied any worse attitude than if they had been purchasers for value; whether they could have demanded a conveyance of the legal title without condition.
It is certainly true, that courts of equity do not aid in the execution of contracts or agreements purely voluntary; and notwithstanding respectable authorities to th.e contrary and what Mr. Justice Story pronounces the “very able” reasoning of Lord Chancellor Sugden, in Ellis v. Nimmo (Loyd & Goold, 333), it would seem also to be now the general rule that such aid will not be given to carry into execution contracts or agreements based- wholly on a meritorious consideration — that is, the moral duty of a parent to make provision for his child,, or of a husband to make like provision for his wife. 1 Story’s Eq. .Juris., § 793, and authorities cited, in the notes.
But whether a court of equity will compel the conveyance of the legal title of land claimed under a parol gift, supported by a meritorious consideration, and by reason of which the donee has been induced to alter his condition and make large expenditures of money in valuable permanent improvements on the land, is a question on which the authorities are not agreed.
Some adjudged cases determine the question . in the negative. Pinckard & Pool v. Pinckard’s heirs and others, 23 Alab. R. 649; Rucker, for, &c., v. Abell and others, 8 B. Mon. R. 566; Adamson v. Lamb, adm’r, 3 Blackf. R. 446. The doctrine of other cases is, that the donee, under such circumstances, becomes the equitable owner of the land, and may rightfully demand the legal title. Syler’s lessee v. Eckhart, 1 Bin. R. 378; Eckert and *others v. Ekert and others, 3 Penn. R. 332; Eckert v. Mace and others, Id. 364; Stewart v. Stewart, 3 Watts R. 253; France v. France, 4 Halstead Ch. R. 650; Lobdell v. Lobdell. 36 New York R. 327; Bright v. Bright, 41 Ill. R. 97; Law v. Henry, 39 Indiana R. 414; Young v. Glendenning. 6 Watts R. 509; Mahon v. Baker, 2 Casey R. 519; Atkinson v. Jackson, 8 Indiana R. 31; Freeman v. Freeman, 43 New York R. 34; Peters v. Jones, 35 Iowa R. 512; Neale v. Neales, 9 Wall. U. S. R. 1.
The ground of these last named decisions is, that the parol gift, with the concurring facts established, rests on the same foundation with a parol contract for sale partly performed, and that equity will carry both into complete execution, notwithstanding the statute of frauds and perjuries, for the same reason, to-wit: to prevent the statute, which was designed to guard against fraud, from being used as a means to perpetrate fraud.
Chief Justice Tilghman, in delivering the opinion of the supreme court of Pennsylvania, in the case of Syler’s lessee v. Eckhart, supra, uses this language: “Although the courts are not disposed to extend the principles on which parol agreements concerning lands have been confirmed, farther than they have already been carried, yet they are bound by what has been decided. It has been settled that where a parol agreement is clearly proved, in consequence of which one of the parties has taken possession and made valuable improvements, such agreement shall be carried into effect. We see no material difference between a sale and a gift; because it certainly would be fraudulent conduct in a parent to make a gift which he knew to be void, and thus entice his child into a great expenditure of money and labor, of which he meant to reap the benefit.”
Although the agreement in King’s heirs and others v. Thompson and wife, 9 Peters R. 204. was not specifically executed, it was because of the uncertainty in the terms *of the agreement. It was there said that the expenditures for the improvements constituted a valuable consideration. See also Rerick v. Kern, 14 Ser. & Raule R. 267; Sheppard v. Bevin and others, 9 Gill R. 32.
An early decision (1811) of this court seems to accord with the Pennsylvania cases, *97 supra. A testator having put his daughter’s husband into possession of a leasehold tract of land and delivered him the lease, permanent improvements also being made by the son-in-law, with the assistance of the family, and parol declaration by the testator, that he had given him the land in consideration of his having married his daughter and to prevent his moving to Kentucky, being proved, it was decided that the son-in-law had an equitable title to the land for the time the lease had to run, and to a release of the legal title from the heirs or executors, according as the interest conveyed by the lease might be greater or less. Shobe’s ex’ors v. Carr and wife, 3 Munf. 10. This was a decision by a court consisting of Judges Roane, Brooke and Cabell, and they were unanimous in the opinion.
We do not find the principles of this decision denied or questioned in any subsequent decision of this court which has come to our knowledge. In Darlington v. McCoole, 1 Leigh 36; Reed’s heirs v. Vannorsdale and wife, 3 Leigh 569; Pigg v. Corder, 12 Leigh 69; Cox & als. v. Cox. 26 Gratt. 305, specific execution was denied, but there is nothing to be found in either of these cases in conflict or at all inconsistent with the decision in Shobe’s ex’ors v. Carr and wife, supra. On the contrary, the reasoning of the judges in some of these cases would rather seem to confirm the principles of that case.
In Reed’s heirs v. Vannorsdale and wife, no expense or loss was incurred by Charles Reed in foregoing his intention to remove to the west, and in moving to and settling on the land promised him by his brother, James Reed; and Judge Cabell took occasion to say that if it *had appeared that such expense or loss had been incurred, he should have been of opinion that specific execution ought to have been enforced.
The following are the material facts in the case before us: William Crumpton, the father of the female appellant, Mrs. Burk-holder, resided in the city of Lynchburg in J 852, and until he removed to Danville, in .1865 or 1866. In 1852, the date of the marriage of his said daughter, he owned a good estate, estimated at from $50,000 to $75,000, and was free from debt. At the institution of this suit he had become insolvent. The year after his marriage, Burkholder purchased the lot in question, then unimproved, at the price of $50. intending to build upon it. Finding himself without sufficient means to accomplish this, he turned the lot over to Crumpton, who paid for it and took the title to himself, declaring that he intended it tor his daughter, Mrs. Burkholder, and commenced building a house upon it for her. Soon after this Burkholder removed with his family to Wytheville, and there engaged in his business, which was that of an architect, practical builder, and manufacturer of agricultural implements. While his business was in a promising condition, Crumpton proposed to him that if he would break up his business at Wytheville and return to Lynchburg, his wife “should have the lot, together with the unfinished improvements thereon, as her own property.” Burkholder acceded to this proposition, returned to Lynchburg with his family, paying his own expenses of removal, and took possession of the lot under the agreement mentioned, and has had and held actual, continuous, notorious, exclusive possession, with claim of title under the agreement thence hitherto. The possession commenced in the year 1855 or 3856. At the time he and his wife and family entered into possession, the building on the lot was about one-third completed. He finished the building out of his own means and means saved by *the earnings of his wife. It must have been completed as earfy as 1858, for in that year the lot and buildings were assessed for taxation at the value of $2,150. The delay in making the deed of conveyance was caused by inattention. The house and lot was evidently intended as a home for Mrs. Burkholder and her family, which included nine infant children at the filing of the bill in this cáse, and her right was never denied or called in question by her father, or any other person, until the institution of the suit. It was proved that Crumpton had made advancements to his children, and that the house and lot held by Mrs. Burkholder did not exceed in value the property advanced to any one of his other children. The two debts, upon which the judgments sought to be enforced against the lot were recovered, were contracted, the one in the year 1861 and the other in 1865.
Upon these facts, clearly and satisfactorily proved, without laying down any general rule, we are of opinion that at the date of the judgments of the appellees, Ludlam, Heineken & Co., and Taliaferro & Mus-grove against William Crumpton, the appellant, Mrs. Burkholder had a valid equitable title to the house and lot in question, and that the said judgments are not liens thereon.
The decree of the circuit court of the city of Lynchburg must therefore be reversed, the bill of the appellees dismissed as to the appellants, and the cause remanded to the said circuit court for further proceedings against the remaining defendants, in order to final decree as to them.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and *filed with the record, that the lot described in said decree as “lot No. 275 in the bill and proceedings mentioned” is not subject to the lien of the judgments in the bill mentioned of the appelless, Ludlam, H eineken & Co. and Taliaferro & Musgrove, or either of them, and the said decree is wholly erroneous. Instead of said decree, the said circuit court should have entered a decree dismissing the bill of the complainants (the said appellees) as to the appellants and the children of Robert C. Burkholder and Mary F,. his wife (defendants in this cause), and ordering the payment by the *98 complainants to said defendants of their .costs by them expended in their defence in this cause in the said circuit court.
It is therefore decreed and ordered, that said decree be reversed and annulled, and that the appellees, Henry Ludlam, Gustave Heineken, and George W. Palmore, iate partners under the style of Ludlam, Heineken & Co., and Nathan C. Taliaferro and J. V. Musgrove, late partners under the style of Talliaferro & Musgrove, pay to the appellants their costs by them expended in the prosecution of the appeal aforesaid here. And this cause -is remanded to the said circuit court, with directions to said court to enter a decree in the cause dismissing the bill of the complainants (who are appellees here) as to the appellants' and the children of Robert C. Burkholder and Mary E. his wife (defendants in the cause), and ordering the complainants to pay to said defendants their costs by them in their defence in this cause in said circuit court expended, and for further proceedings, in order to final decree in conformity with the opinion and principles herein expressed and declared; which is ordered to be certified to the said circuit court of the city of Lynchburg.
Decree reversed.