CASE 37—WILL—JUNE 9, 1883.

# Sherley, &c., v. Sherley's ex'r, &c.

### APPEAL FROM JEFFERSON COMMON PLEAS COURT.

1. While prejudice, ill-will, or hatred, or the exhibition of violent passion by a person ordinarily affable, do not of themselves constitute insanity, they may be the manifestations of mental derangement, and the question should be left to the jury to determine whether they result from naturally ungovernable passions or were produced by provocation, or were the indication of a decaying mind.

2. It was error to instruct the jury that, if they believe the cause assigned by the testator for the inequality between his children and grandchildren was true, they must regard the testator as having made the inequality for that reason alone.

3. The court having singled out the matter of inequality, and told the jury that the testator had the right to make such distinction between the objects of his bounty as he chose to do, they ought also to have been told that any gross inequality requires evidence that it was the act of a rational mind.

ISAAC CALDWELL, JOHN ROBERTS, WILLIAM LINDSAY, AND HORACE BRANNIN FOR APPELLANTS.

1. The court erred in instructing the jury to "disregard all the evidence in reference to the ill-will or hatred of the testator towards A. O. Brannin, the maternal grandfather of appellants."

2. We insist that the unnatural and unaccountable prejudice of the testator against Brannin should have gone to the jury as tending to show incapacity. (Tudor v. Tudor, 17 B. Mon., 314.)

3. The instruction refused by the court confines the proper state of mind to the intellectual state of mind alone.

4. That the will upon its face is unreasonable and unnatural is patent, and the jury ought to have been left free to determine whether the reason offered for the gross inequality was such as a disposing mind would have offered.

5. By instruction four the court deprives the jury from considering the question whether the reason assigned for the inequality was of itself the act of an unsound mind. (Singleton's will, 8 Dana, 321.)

6. The proof clearly shows that the testator's mind was injured by the loss of his son.

7. That it was poisoned against Brannin.

8. That the inequality is opposed to his wonted sound judgment.

9. That if not mentally incapable of making a will, he was so enfeebled in body and mind as to be under the control of those having access to him, and that the paper was procured by the influence of John Sherley, his son. (Redfield on Wills, vol. 1, 79; 6 Georgia, 324; 7 Gill, 10; Harrell v. Harrell, 1 Duv., 204; Kevil v. Kevil, 2 Bush, 615; 25 N. Y. Rep., 9; Shropshire v. Reno, 5 J. J. Mar., 91; 7 B. Mon., 657; 40 Mich., 395.)

JAMES SPEED, J. K. GOODLOE, E. McKAY, AND ALEX. HUMPHREY FOR APPELLEES.

1. There is nothing in the proof to authorize an instruction as to alleged undue influence. The courts universally hold that undue influence in procuring a will must amount to moral coercion. (6 Ga., 524; Turley v. Johnson, 1 Bush, 116; Lucas v. Cannon, 13 Ib., 650.)

2. The influence acquired by kind offices unconnected with fraud can never be a ground for setting aside a will. Such influence is lawful and proper. (6 Ga., 24; 2 Greenl. on Ev., sec. 628; Elliott's will, 2 J. J. Mar., 229; Sechrist v. Edwards, 4 Met., 163; 13 Bush, 652.)

3. The law looks only to the competency of the understanding. The failure of memory is not sufficient to create incapacity. (1 Gr. Ch'y, 8; 4 Wash. C. C., 262; 2 Gr. Ch'y, 563; 6 Ga., 324; 5 Johns. Ch'y Rep.; Van Alst v. Hunter, 3 Serg. & R., 267; Harrison's will, 1 B. Mon., 357; 28 Iowa, 430; 4 Greenl., 220; 26 Miss., 104; 74 Ills., 33; Watson v. Watson, 2 B. Mon., 74; Reeves' will, Ib., 79; McDaniel's will, 2 J. J. Mar., 331.)

4. There is, from the apparent inequality of the devise, no intrinsic evidence of, or even presumption of, insanity, imbecility, or forgetfulness, either of his estate or the objects of his bounty. (Kevil v. Kevil, 2 Bush, 614; Monday v. Taylor, 7 Bush, 491; Broaddus v. Broaddus, 10 Ib., 299.)

5. The court properly rejected the instruction asked for by appellants in regard to inequality. In the Broaddus case the testator gave no reason for the inequality shown by the will. In this case the reason is given. (17 Ala., 84; 2 Zab., 117; 77 Ills., 397; 39 Barb., 373.)

6. The instructions given by the court upon its own motion are unobjectionable. When the instructions asked by appellants touch the same points they were unnecessary, because the court had already given the whole law of the case to the jury. (Dew v. Clark, 1st and 2d

Adams' Ecclesiastical Rep.; 3 *Ib.*, 436; Johnson v. Moore, 1 Litt., 240; 8 Dana, 315; Banks v. Goodfellow, 5 L. & R. O. B., 549, 570; 34 N. Y., 190; Flood on Wills, 389; 27 Ga., 324; 54 Barb., 274.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

After the probate, by the county court, of two papers, dated January 7th, 1879, purporting to be the last will and testament of Captain Z. M. Sherley, deceased, on appeal to the court of common pleas, they were sustained as such by the verdict of a jury, and from the judgment on the verdict the contestants appealed.

At the time the papers were signed, the deceased had a wife and three sons living, and one son dead, who left only two children, the contestants in this case. To these grandchildren the contested papers purport to bequeath the sum of $10,000, to be held in trust for twenty years, the accumulating interest to be added to the principal by trustees, who are to act without security, and dispose of the remainder of his estate, amounting to three or four hundred thousand dollars, between his wife and three sons in something like equal proportions. This apparent inequality between the living sons and the children of the dead son was relied on by contestants to show incapacity and undue influence, which they contend was shown by it in connection with other evidence tending to prove that John C. Sherley tried to get his father to make a codicil affecting the appellants, and influenced him to remove from his share the trusts imposed by a former paper alleged to be a will, and which the draftsman was directed to insert in the contested papers; that various material changes in the disposition of his property, and the appointment of appraisers and the non-requirement of surety of the trustees designated for appellants, were inserted at the suggestion of the draftsman; that the deceased

Sherley, &c., v. Sherley's ex'r, &c.

had suddenly, and without sufficient reason, contracted vio-
lent prejudices against the maternal grandfather of the ap-
pellants, and indulged the suspicion that he was trying to
get hold of their property, notwithstanding he wished the
deceased to become their guardian himself; that those
prejudices were in part transferred to the appellant; that
the discrimination of the papers offered for probate was con-
trary to his former expressions and purpose that the appel-
lants should have their father's full share, and that when he
executed them he was greatly diseased from cancer of the
stomach that had been assailing him from an unknown
period, and which so impaired his physical and mental
faculties as to render him incapable of making a will or
resisting the undue influence of others.

This evidence was in conflict with that adduced by the
propounders, who insist that it is fully explained and over-
turned.

The doctors disagreed as to the effect of cancer of the
stomach upon the mind. Some of them testified that it
rendered the mind brighter, and others that it impaired it,
each giving the stages of its ravages wherein he conceived
it to affect the mental powers. Other witnesses disagreed
in the opinions they expressed as to the mental capacity of
the deceased.

We intimate no opinion as to the side upon which the
weight of the evidence rests, because, under the law as it
now exists, the verdict of a jury in a will case has the same
effect as the verdict of a jury in other civil cases; and only
where there is no evidence to support a verdict rejecting a
paper executed according to the forms of the statute will
this court, upon reversal, order it to probate. In cases like
the present, the verdict being in favor of the paper, our

province is to ascertain whether there is evidence on which
a different verdict might be made by a jury, and if so,
whether there was any error of law committed at the trial
in giving or refusing instructions, or in admitting or reject-
ing evidence.   In looking at the evidence, the question for
this court is, not whether the verdict is palpably against the
evidence, or supported by it, but whether, if the verdict
were otherwise, there would be any evidence on which to
base it.   As the testimony is conflicting, and that offered
by the appellants sufficient to sustain a verdict in their
behalf, if uncontradicted and unexplained, it becomes our
duty to examine the instructions, and determine their le-
gality.

The appellants contend that the prejudices and hatred of
the deceased to their grandfather, A. O. Brannin, amounted
to an insane aversion to him on which rested mental delusion
with regard to them that caused the discrimination against
them.   The court instructed the jury, by its fifth instruc-
tion, as follows: "The jury are instructed to disregard all
the evidence in reference to the ill will, prejudice, or hatred
of the testator towards A. O. Brannin, the maternal grand-
father of the contestants."   To this, as well as the other
instructions given, the contestants objected and excepted.

While ill-will, prejudice, hatred, or the exhibition of vio-
lent passions, by a person usually good humored and affable,
such as the evidence tends to portray Capt. Sherley, do not
of themselves constitute insanity, they may be, and often are,
the manifestations of mental derangement; and evidence of
their existence with reference to persons so nearly related to
those naturally entitled to his bounty as the maternal grand-
father, against whom he entertains suspicions which might
affect the disposition of his property, should be left to the

jury to determine, whether they result from naturally ungovernable passions, or were produced by provocation, or were the indication or sign of a decaying or decayed mind, where the issue of sanity or insanity is being tried by them. (Tudor v. Tudor, 17 B. M., p. 395, close of page.)

The fifth instruction was therefore erroneous, and took from the jury the explanation of a portion of the acts and words of Capt. Sherley which related to the appellants as well as to their grandfather, and which may have, in the opinion of the jury, materially influenced Capt. Sherley in discriminating against them, by reason of insanity produced by these or other causes. In the fourth instruction the court instructed the jury "that if they believe from the evidence that the cause assigned by the testator in the paper or will in dispute for the inequality between his children and his grandchildren was true, then they must regard the testator as having made that inequality for that reason or cause alone."

The cause assigned by the deceased in the papers offered for probate for the inequality was, in substance, that his son Lewis, the father of appellants, had stated to him that he did not want his children to have a large estate, and intended to make a will in such manner that they should receive about ten thousand dollars each. If the jury believed from the evidence that these statements in those papers were true, then it mattered not, under this instruction, what they believed as to Capt. Sherley's incapacity or the alleged undue influence; they were compelled, in obedience to it, to disregard such belief, and conclude that Capt. Sherley made the inequality for the reason or cause alone as found in the papers in dispute. This cannot be law. Although it may have been true that Lewis did not wish his

children to have more than ten thousand dollars each, and so informed his father, yet it does not follow that the papers in contest were not the product of undue influence, incapacity, or other causes. The jury were the sole judges of the facts or causes which influenced the execution of the disputed papers, and should not have been so restricted in their consideration of the question.

As said by this court in Wise, &c., v. Foote, &c., MS. Opin., February 1, 1883, "influence obtained by flattery, importunity, threats, superiority of will, mind, or character, or by what art soever that human thought, ingenuity, or cunning may employ, which would give dominion over the will of the testator to such an extent as to destroy free agency or constrain him to do against his will what he is unable to refuse, is such an influence as the law condemns as undue, when exercised by any one immediately over the testamentary act, whether by direction or indirection, or obtained at one time or another." And when such influence is exercised by one person over another, it is not unreasonable to suppose that the most effective mode of concealing the operation is to cause the paper produced by it not only to read sensibly, but if circumstances will permit, also to state in its face a truthful and plausible reason for its contents, whether sufficient or not in fact. Hence, if the jury be confined to the cause assigned in the paper for making it, if that cause or fact be true, then all that was necessary to render the paper valid, although it may have been the product of undue influence, was the insertion of a fact in it known to the person exercising the undue influence to be true, and prove that on the trial.

By the third instruction the jury were told that "the testator had the right to make such distinction between

the objects of his bounty as he chose to do, if at the time he did so voluntarily and understandingly, was not controlled by undue influence, and was of sound mind."

This instruction singles out the fact of inequality, and guards it so that the jury might not give full weight to it. This court, when it had the power to try both law and fact, said: "The testator had an unquestionable right to make such a will; but its apparent unreasonableness requires satisfactory evidence that it was the free and deliberate offspring of a rational, self-poised, and clearly disposing mind." (Harrell, &c., v. Harrell, &c., 1 Duvall, 204.)

Such a presumption arising from the fact of inequality is a disputable presumption, and always exists where gross inequality is unexplained by the statements of the document, or by the proof itself, and is a legitimate concomitancy of that fact until such explanation is satisfactorily made.

Discussions and arguments of this character to be found in the books, when this court tried the facts as well as the law, were legitimate, and belonged more properly to the domain of logic, and were not intended as expositions ·of guiding law to be given in the form of instructions to the jury, unless they be told that gross inequality is accompanied by the presumption quoted above from 1st Duvall, excluding therefrom the word "clearly," which was the apparent ground of condemning an instruction on the subject in the case of Broaddus' will, 10th Bush, 305. There, however, it was said: "The statement of such an abstract proposition might be unobjectionable in an argument upon the facts of a particular case," but embodied in an instruction that it is misleading, and calculated to divert the minds of the jury from the issue of mental capacity "to that of the inequality."

Hence we conclude if a limitation is imposed by an instruction upon the presumption flowing from gross inequality, the breadth of that presumption should be also defined to the jury.

The issue to be tried by the jury is not the lawful right of a man to make a will, and dispose of his property in his own way, but whether, having that right, regardless of their opinion, *he has made a will when he had a sound and disposing mind, ungoverned by undue influence, or fraud or duress, and according to the forms and requirements of the statute.* Therefore the existence or non-existence of these questions of fact are the only subjects upon which the jury should have been instructed in this case. Such instructions should, as of necessity, embrace proper definitions of mental capacity, undue influence, duress or fraud, if any exists, and of the requirements of the statute.

We see no prejudice to the substantial rights of the appellants by the 7th instruction, for it is a less burden on them to show he had not capacity to do the several united acts therein specified than to demonstrate his inability to do any one of them, for it took more mind to do all than to do one of them. If, therefore, he was shown incapable of doing them all, but it appeared he knew his heirs or estate, the instruction authorized the jury to find for contestants. This instruction was correct law, though inaptly drawn, and cast upon contestants the burden only of showing his incapacity to do any of the matters enumerated as essential to testable capacity according to instruction No. 2, given at appellees' instance. The word "prevents," as used in instruction No. 1, given by the court, might imply to the mind of the jury physical force, and should not have been used. (Lucas, &c., v. Cannon, &c., 13th Bush, 652.)

Sherley, &c., v. Sherley's ex'r, &c.

As we understand testable capacity, as defined by the instruction in Tudor v. Tudor, 17 B. Mon., 391, it is the ability of the testator to know his children or the objects of his bounty, and his estate, and to dispose of the same in a rational manner according to a fixed purpose of the testator; that such capacity must exist without the officious or coaching promptings of any one, and enable him to dispose of his property in a rational mode or manner according to his own purpose.

In other words, *he* alone must have the capacity, without the necessity of aid from any other person, to comprehend or understand all or any of the essential elements of testable capacity which were approved in Tudor v. Tudor.

The determination of the questions of law raised in connection with the instructions we have considered, settles the points as to the improper exclusion of evidence offered by the contestants.

Wherefore the judgment is reversed, and cause remanded, with directions to grant appellants a new trial.

The following modified opinion was rendered by Chief Justice Hargis:

For sufficient reasons the court refrains from expressing any opinion as to the question of credibility of the attesting witnesses to the papers in contest, and leaves that question open in view of the new trial which has been ordered. The opinion, to this extent, is modified.