## Staunton.

## WOHLFORD V. WOHLFORD.

### September 20, 1917.

1. FRAUDS, STATUTE OF—*Parol Gift of Land—Contract for Gift to be Perfected by Will.*—Prior to May 1, 1888, the date upon which the Code of 1887 took effect, a parol gift or a promise of a gift of land, to be consummated by deed, if followed by im-- provements on the land, was enforceable under the doctrine of such cases as *Halsey* v. *Peters*, 79 Va. 60; and a contract for a gift to be perfected by will, under similar circumstances, was enforceable under the doctrine announced in *Burdine* v. *Burdine*, 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741. But in view of the history and apparent purpose of section 2413 of the Code of 1904, which first made its appearance in the Code of 1887, no such contract is now enforceable. That section provides that no right to a conveyance of an estate of inheritance or freehold, or for a term of more than five years in lands, shall "accrue to the donee of the land, or those claiming under him, under a gift or promise of gift of same hereafter made and not in writing, although such gift or promise be followed by possession thereunder and improvement of the land by the donee, or those claiming under him."

2. FRAUDS, STATUTE OF—*Parol Gift of Land—Contract for Gift to be Perfected by Will.*—In the case at bar, it was contended on behalf of the appellant that section 2413 of the Code of 1904 had no application, because the alleged contract was based upon a valuable consideration, to-wit: the complainant's change of position by leaving his own farm and bestowing his labor and care upon that of another, and the sale of his own land and application of the proceeds to improvements upon the place with reference to which he had a parol contract. But in this respect, the case cannot be distinguished in principle from *Halsey* v. *Peters*, 79 Va. 60, the doctrine of which and the other Virginia cases of. that type, section 2413 of the Code of 1904 was expressly designed to abolish.

3. WILLS—*Testamentary Capacity—Undue Influence.*—A father in his last days totally disinherited his son by a deed and a will because of certain rumors relating mainly to his son's

attitude and conduct towards him, which had some foundation in fact, but which the son could apparently have satisfactorily explained if his father had been willing to give him a fair hearing and listen to a reasonable explanation. It did not appear from the evidence that the father's disposition of his property could be attributed to mental incompetency, for the evidence conclusively shows that he was entirely capable of transacting business when he made the change in his will and when he executed the deed; nor to undue influence from others, for he is shown to have been a man of strong purpose, and there is no evidence, except possibly by way of inference, that any person or persons attempted to influence or control him in the matter; nor was it due to what the law recognizes as an insane delusion, for although the rumors of what his son had said and done were evidently exaggerated in his own imagination, as a result of his high temper and suspicious disposition, and probably as a result of inaccurate information, these rumors were nevertheless founded upon actual occurrences.

*Held:* That the lower court did not err in holding that the father at the time of the execution of the deed and will attacked, was possessed of the requisite mental capacity to make the same, and that these papers were not rendered invalid by any undue influence brought to bear upon him.

4.  WILLS—*Testamentary Capacity.*—As a general rule the right of a testator to dispose of his estate as he likes depends neither on the justice of his prejudice nor the soundness of his reasoning. He may do what he will with his own; and, as to his relatives, all that is required of him at the time of making his will is that he shall possess ability to comprehend those who appear as the natural objects of his bounty and appreciate the duty which recommends them to consideration. In determining whether certain relatives are such objects, he must possess ability to reach a rational conclusion, however erroneous or unjust, with reference to them. Hence, ordinarily, capricious and arbitrary likes and dislikes of his relatives who are the objects of his bounty, or should be, are not evidence of insanity or a want of mental capacity to make a will, on the part of a testator who entertains such likes or dislikes.

Appeal from a decree of the Circuit Court of Wythe county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*E. Lee Trinkle* and *W. B. Kegley,* for the appellant.

*W. S. Poage* and *S. B. Campbell,* for the appellee.

KELLY, J., delivered the opinion of the court.

This is a controversy between Frank B. Wohlford and his brother, George C. Wohlford, concerning the ownership of a tract of land called the "Nye Place," formerly owned by their father, the late George M. Wohlford.

Early in the year 1911, Frank B. Wohlford, at the instance of his father, left his own home, some miles away, and moved to the Nye place, where he has ever since resided. On December 30, 1911, his father (who lived until June 14, 1915) made a will in which he devised the Nye Place to his son Frank, but added a codicil on July 13, 1914, by which he revoked this devise and gave the place to his son George, thereby leaving Frank entirely out of any share or part in the distribution of his estate. Still later, February 19, 1915, he made a deed to George for the Nye Place, and the latter shortly thereafter brought an action of unlawful detainer against Frank to recover the possession. Thereupon, Frank B. Wohlford instituted the present suit in equity to enjoin the prosecution of the action of unlawful detainer, to set aside and annul the codicil and the deed to his brother George, and for general relief.

The original, amended and supplemental bills (hereinafter referred to as the bill) upon which the cause was heard in the circuit court, placed the complainant's claim to relief upon three grounds: First, a parol contract with his father by virtue of which he claimed to be entitled to hold the Nye Place as his own; second, the mental inca-

pacity of his father at the time of the execution of the codicil and deed, and, third, the undue influence which he alleged had been exerted over his father by the latter's wife and daughter (complainant's stepmother and half sister) and other members of the family.

There was a demurrer to the bill, which was sustained as to the alleged contract, and the averments in regard thereto were stricken out by the court; but the demurrer was overruled as to the remaining allegations. The defendant, George C. Wohlford, then answered the bill as thus limited, denying its allegations as to his father's mental incapacity and the undue influence exerted upon him; and on these two issues a large volume of testimony was taken. Upon final hearing the court entered a decree, holding that George M. Wohlford was mentally competent to make the codicil and deed and was not unduly influenced to do so, and dismissing the bill at the cost of the complainant. From this decree Frank B. Wohlford brings this appeal, assigning as error the action of the court, first, in sustaining the demurrer to the part of the bill relating to the alleged contract, and, second, in decreeing against the complainant as to the remaining allegations upon the final hearing.

Taking up these assignments in their order, we are of opinion that the court was right in holding that the bill did not set forth a contract which the complainant could specifically enforce. The substance of this contract, as alleged, was that the complainant was induced to leave his Stony Fork farm, where he had lived for several years, and move with his family to the Nye Place, and subsequently to sell the Stony Fork farm and apply the proceeds, as well as his subsequent labor and earnings, to improvements on the Nye Place, upon the express promise and assurance of his father that the place should belong to the complainant absolutely at his father's death and should be devised to him by the latter's will.

Prior to May 1, 1888, the date upon which the Code of 1887 took effect, a parol gift or a promise of a gift of land, to be consummated by deed, if followed by improvements on the land, was enforceable under the doctrine of such cases as *Halsey* v. *Peters*, 79 Va. 60; and a contract for a gift to be perfected by will, under similar circumstances, was enforceable under the doctrine announced in *Burdine* v. *Burdine*, 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741. But in view of the history and apparent purpose of section 2413 of the Code of Virginia, which first made its appearance in the Code of 1887, no such contract is now enforceable. That section provided that no right to a conveyance of an estate of inheritance or freehold, or for a term of more than five years in lands, shall "accrue to the donee of the land, or those claiming under him, under a gift or promise of gift of the same hereafter made and not in writing, although such gift or promise be followed by possession thereunder and improvement of the land by the donee, or those claiming under him."

It is earnestly contended on behalf of the appellant that this section has no application to the instant case, because the alleged contract was based upon a valuable consideration, to-wit: the complainant's change of position by leaving his own farm and bestowing his labor and care upon that of another, and the sale of his Stony Fork land and application of the proceeds to improvements upon the Nye Place, but the case in this respect cannot be distinguished in principle from that of *Halsey* v. *Peters*, *supra*. As indicated above, if the law were now as it was when *Halsey* v. *Peters* was decided, the complainant would be entitled to the relief he seeks, because he would have a contract with reference to the Nye Place which, under the doctrine of *Burdine* v. *Burdine*, *supra*, would have charged it with a trust enforceable in a court of equity. It seems clear, how-

ever, that section 2413 was expressly designed to abolish
the doctrine of *Halsey* v. *Peters* and the other Virginia
cases of that type.

In the case of *Nicholas* v. *Nicholas,* 100 Va. at page 664,
42 S. E. 670, Judge Keith, in dealing with a gift from a
father to a son, uses the following language: "The terms
of section 2413 seem necessarily to embrace such transac-
tions as that under investigation, and the cases cited by the
revisors in connection with that section show that gifts of
land by a parent to a child were within the contemplation
of those who prepared the section. *Burkholder* v. *Ludlam,*
30 Gratt. (71 Va.) 255, [32 Am. Rep. 668]; *Stokes* v. *Oli-
ver,* 76 Va. 72; *Griggsby* v. *Osborn,* 82 Va. 371."

Judge E. C. Burks, one of the revisors of the Code of
1887, in speaking of the changes wrought by section 2413,
says: "Even a parol *gift of land,* if possession was taken
by the donee and a large expenditure was made by him in
improving the land, was treated in equity as a valid sale,
and was allowed to be set up on oral testimony alone. This
was a most prolific source of fraud.

"Voluntary partition, also, of land by coparceners, was
considered as not within the operation of the statute re-
quiring a deed to convey an estate of inheritance or free-
hold, and therefore partition by parol was upheld.

"In both of these instances the law was changed by the
revision so as to require writing." Burks' Address, 4 Va.
Bar Association Reports, 117, 118.

Professor John B. Minor, in commenting upon section
2413, says, "that in Virginia, in case of a *gift without valu-
able consideration,* though followed by possession and valu-
able improvement of the land, the exposition following (re-
lating to specific execution of parol contracts for real es-
tate) must be taken with the needful allowance for the pro-

visions of the foregoing statute; and hence the statute overrules the cases of *Halsey* v. *Peters,* 79 Va. 60, and *Griggsby* v. *Osborn,* 82 Va. 373."

The instant case presents no stronger facts upon which to claim that the gift was based upon a valuable consideration than did the case of *Halsey* v. *Peters,* and we think, therefore, that it must be accepted as settled law in Virginia that contracts of the character here involved are expressly invalidated by the statute in question.

Passing now to the second assignment of error, we are further of opinion that the court did not err in holding that George M. Wohlford, at the time of the execution of the codicil and deed attacked in this case, was possessed of the requisite mental capacity to make the same, and that these papers were not rendered invalid by any undue influence brought to bear upon him. A protracted discussion of this branch of the case would serve no good purpose. The rules of law to be applied are well settled (*Wooddy* v. *Taylor,* 114 Va. 737, 77 S. E. 498) ; and the evidence in the case is too voluminous to admit of any particularized discussion. We have considered the testimony carefully and we have no doubt as to the correctness of the lower court's finding upon the facts.

The action of Frank Wohlford's father appears to us, and doubtless appeared to the circuit court, as unkind, unnatural and unfair. The record presents a peculiarly distressing and pathetic spectacle of a father, always high strung and easily offended, turning in his last days against a son for whom he had previously seemed to entertain especial affection, and totally disinheriting him because of certain rumors relating mainly to his son's attitude and conduct towards him, which had some foundation in fact, but which the son could apparently have satisfactorily explained if his father had been willing to give him a fair hearing and listen to a reasonable explanation. This change

of feeling upon the part of George M. Wohlford cannot, as
we think, properly be attributed to mental incompetency,
for the evidence conclusively shows that he was entirely
capable of transacting business when he made the change
in his will and when he executed the deed.   It was not due
to undue influence from others, for he is shown to have
been a man of strong purpose, and there is no evidence, ex-
cept possibly by way of inference, that any person or per-
sons attempted to influence or control him in the matter.
It was not due to what the law recognizes as an insane de-
lusion, for although the rumors of what his son had said
and done were evidently exaggerated in his own imagina-
tion, as a result of his high temper and suspicious disposi-
tion, and probably as a result of inaccurate information,
these rumors were nevertheless founded upon actual occur-
rences.   His wife and daughter and certain other members
of the family seem to have shared and encouraged his be-
lief and feeling, and certainly they did nothing to quiet and
reconcile him; but we think it is clear that his action, un-
wise and unjust as it appears, was primarily due to his own
unyielding temper and unforgiving disposition.   Such cases
cannot be remedied by the courts, but fall within principles
which are so well expressed and fortified by authority in a
note to the case of *McDonald* v. *McDonald,* 117 Am. St. Rep.
582, that we shall conclude this discussion by the following
extract therefrom:   "It may be safely stated that as a gen-
eral rule the right of a testator to dispose of his estate as he
likes depends neither on the justice of his prejudice nor the
soundness of his reasoning.   He may do what he will with
his own; and, as to his relatives, all that is required of him
at the time of making his will is that he shall possess
ability to comprehend those who appear as the natural ob-
jects of his bounty and appreciate the duty which recom-
mends them to consideration.   In determining whether cer-
tain relatives are such objects, he must possess ability to

reach a rational conclusion, however erroneous or unjust, with reference to them. *Smith* v. *Smith*, 48 N. J. Eq. 566, 25 Atl. 11. Hence, ordinarily capricious and arbitrary likes and dislikes of his relatives who are the objects of his bounty, or should be, are not evidence of insanity or a want of mental capacity to make a will on the part of a testator who entertains such likes or dislikes. *Estate of Spencer*, 96 Cal. 448, 31 Pac. 453; *Pelamourges* v. *Clark*, 9 Iowa, 1; *Sherley* v. *Sherley*, 81 Ky. 240; *Barnes* v. *Barnes*, 66 Me. 286; *Trumbull* v. *Gibbons*, 22 N. J. Law 117; *Coit* v. *Patchen*, 77 N. Y. 533; *Matter of Will of White*, 121 N. Y. 406 [24 N. E. 935]; *Chaney* v. *Bryan*, 16 Lea (84 Tenn.) 63; *Will of Code*, 49 Wis. 179 [5 N. W. 346]. People may hate their relatives for bad reasons, and not be deprived of testamentary capacity. *Carpenter, Estate of,* 94 Cal. 406 [29 Pac. 1101]. Prejudice, hatred, ill-will and the exhibition of violent passions on the part of one formerly affable do not prove a want of mental capacity to make a will. *Sherley* v. *Sherley*, 81 Ky. 240. And resentment of a testator against his son not amounting to a delusion, will not vitiate a will prejudicial to such son, made in accordance with previously declared intentions. *Lucas* v. *Parsons*, 24 Ga. 640, 71 Am. Dec. 147.

"Or the fact that a testator gave his daughter a comparatively small portion of his property, after there had been an estrangement and quarrel between them, cannot be considered as of any weight on the question of his mental capacity to dispose of his property by will. *Meeker* v. *Meeker*, 75 Ill. 260. That a man became prejudiced against some of his children without sufficient cause, and made unjust remarks against them not warranted by the facts does not show that he has insane delusions, or was devoid of testamentary capacity, because an owner of property who has capacity to attend to ordinary business has the right to dispose of it by will as he may choose, and if he is capable of

acting rationally in the ordinary affairs of life so that he may comprehend what disposition he may wish to make of his property, and be able to select the objects of his bounty, he is capable of making a valid will. *Schneider* v. *Manning,* 121 Ill. 376 [12 N. E. 267].

"A testator may have his preferences, dislikes, and animosities toward his heirs, and may be guided by them in the disposition of his estate by will, yet if he is competent in mind and makes his will freely and voluntarily, these conditions of mind will not *per se* destroy his will for want of testamentary capacity, and though such prejudice may be unfounded, still if they are not used to coerce and control his will or impose a fraud upon him, they will not avoid his will. *Carter* v. *Dixon,* 69 Ga. 82. Or the fact that the provisions of a will are unjust or are the result of passion toward children, or of unworthy or unjustifiable sentiments, or of false information toward them, is not sufficient to invalidate the will. *Buchanan* v. *Belsey,* 65 App. Div. 58 [72 N. Y. Supp. 601]."

Having reached the conclusions above announced, it becomes unnecessary for us to notice the cross-error assigned by the appellee and based upon the contention that the will of George M. Wohlford, having been duly admitted to probate, could not be collaterally assailed.

There was no error in the decree complained of, and it is affirmed.

*Affirmed.*