# Richmond.

## GRACE G. FRIZZELL, ET AL. V. CLARENCE G. FRIZZELL.

### March 1, 1928.

1. SPECIFIC PERFORMANCE—*Parol Gift of Land Followed by Improvements.*— Prior to May, 1888, the date upon which the Code of 1887 took effect, a parol gift or a promise of a gift of land, to be consummated by deed, if followed by improvements on the land, was enforceable; and a contract for a gift to be perfected by will, under similar circumstances, was enforceable. But this doctrine is expressly abolished by section 5141 of the Code of 1919 (section 2413 of the Code of 1887) where a gift or promise is unsupported by a consideration.

2. SPECIFIC PERFORMANCE—*Promise to Devise Land—Consideration—Case at Bar.*—In the instant case a testator devised to his nephew certain real estate and presonal property. After the death of testator his wife bore a posthumous child. The nephew admitted the birth of the child, but claimed that he was entitled to all the property devised and bequeathed to him by the will, free from any right or claim on the part of the child, by virtue of a parol contract by which testator promised to devise and bequeath him the said property.

   *Held:* That since there was a consideration alleged the contract between testator and his nephew did not come within the inhibition of section 5141 of the Code of 1919 (section 2413 of the Code of 1887), but belonged to that class of cases to which the rules of law pertaining to the specific performance of contracts for the sale of land are applicable.

3. SPECIFIC PERFORMANCE—*Parol Contract for Conveyance of Land—Proof Must be Clear and Convincing.*—The enforcement in equity of a parol contract for the conveyance of land depends upon clear and convincing proof.

4. SPECIFIC PERFORMANCE—*Parol Agreement for Sale of Land—Requisites for Specific Performance.*—The following requisites must concur before a court of equity will avoid the statute of frauds and decree specific performance of a parol agreement for the sale of land. The parol agreement relied on must be certain and definite in its terms. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. The agreement must have been so far executed that a refusal of full execution would

operate a fraud upon the party, and place him in a situation which does not lie in compensation.

5. SPECIFIC PERFORMANCE—*Parol Agreement for Sale of Land—Requisites for Specific Performance—Acts of Part Performance.*—Before equity will decree specific performance of a parol agreement for the sale of land, the act or acts of part performance must be of such an unequivocal nature as of themselves to be evidence of the execution of an agreement. The acts must have been such as the party would not have done unless on account of the very agreement, and with a direct view to its performance.

6. SPECIFIC PERFORMANCE—*Parol Contract for Conveyance of Land—Proof Must be Clear and Convincing—Case at Bar.*—In the instant case a nephew of testator alleged that testator in consideration for care and support had agreed to devise him certain lands. The testator in his will did devise the nephew this land, but after his death his widow bore a posthumous child. While the evidence adduced as to the existence of the alleged contract was not of the clear and convincing character to be desired in such cases, it was not necessary for the appellate court to determine whether the evidence of the existence of a contract was sufficient; for if it be conceded that the existence and terms of the contract set up by the nephew were satisfactorily proved, it was clear that the evidence failed to meet the requisites for a decree of specific performance of a parol promise to devise land.

7. SPECIFIC PERFORMANCE—*Promise to Devise Land—Proof—Acts not Constituting Satisfactory Evidence of a Promise—Case at Bar.*—In the instant case a nephew of testator was asserting his right to. land devised him by the testator, notwithstanding the birth of posthumous child, on the ground that the devise was in fulfillment of a promise by the testator to devise the land to his nephew in return for an undertaking by the nephew to board and take care of testator and his wife till his death. Considering that the nephew was making his home at testator's house and had the exclusive use and benefit of his farms and all his tangible personal property free of charge, it was just as consistent to assume that the board furnished and the "care" expended, which was only such usual and ordinary attention as one would be expected to render to his sick relative living under the same roof, were in consideration of the benefits he was then receiving, as it was to assume that they were done in performance of an existing contract to devise the property to the nephew.

*Held:* That the board and care did not, of themselves, constitute satisfactory evidence of the execution of such agreement, and they could not be said to be such acts as would not have been done unless on account of the very agreement to devise the land to the nephew, and with a direct view to its performance.

8. SPECIFIC PERFORMANCE—*Refusal of Specific Performance as Fraud on Complainant—Situation not Lying in Compensation—Alleged Promise to Devise Land in Return for Care and Support—Case at Bar.*—In the instant case a nephew of testator was relying upon an alleged promise of testator to devise him certain land in return for board and care. It was contended by counsel for the nephew that a refusal of specific performance of this agreement to devise land would operate a fraud on the nephew, and "place him in a situation that does not lie in compensation." There was nothing so exceptional or peculiar in the character of the alleged acts of performance by the nephew that their pecuniary value might not be easily estimated. There was no good reason why the nephew could not be fairly and justly compensated, if necessary, for such personal services as he and his wife rendered in helping to nurse testator and wait on him during his last illness. The board supplied by the nephew and taxes paid by him could be readily computed in dollars and cents.

*Held:* That a decree denying specific performance, under these circumstances, would not operate as a fraud on the nephew.

9. WILLS—*Pretermitted Children—Section 5242 of the Code of 1924—Promise to Devise Property to Nephew—Case at Bar.*—In the instant case testator devised real and personal property to appellee, his nephew. After the death of testator his wife bore a posthumous child. There was no doubt that the testator wanted his nephew to have the real and personal property in question. At the time he made his will he had no children, had recently married the second time, and appellee was his favorite nephew. Nor was there any doubt that he promised appellee to will him the property, and that the latter had every reason to believe he would carry out that promise. But for the birth of the posthumous child the intentions of the testator and the expectations of appellee would have been consummated, and it is due to that event, coupled with the interposition of the statute (section 5242 of the Code of 1924), that they have been defeated. The courts, however, must interpret and apply the law as it is, and under section 5242 of the Code of 1924 the rights of the nephew to the property devised were defeated by the birth of the child.

10. WILLS—*Gifts-Pretermitted Children—Bequest of Personal Property—Case at Bar.*—In the instant case the testator bequeathed certain personal property to his nephew, appellee. After the death of the testator his wife bore a posthumous child. Appellee claimed that the personal property was given to him by testator in his lifetime. It was contended by counsel for appellants that the gift was invalid under the provisions of section 5142 of the Code of 1919. It appeared that the alleged gift of transfer was not in writing, and that the donor and donee were residing together at the time.

*Held:* That the gift was invalid under section 5142 of the Code of 1919.

11. APPEAL AND ERROR—*Final Decree by Appellate Court—Distribution of Decedent's Estate—Case at Bar.*—In the instant case the appellate court held that certain property devised and bequeathed to a nephew of testator, appellee, was governed by the statute (section 5242 of the Code of 1924) relating to pretermitted children. Counsel for appellants asked the appellate court to adjust and decree the respective equities of the parties under that statute. These questions did not arise in the trial court and counsel for appellee did not undertake to deal with them in his brief.

  *Held:* That the questions were not properly before the appellate court and that court referred them to the lower court to be dealt with according to the statute.

Appeal from a decree of the Circuit Court of the city of Norfolk.   Decree for defendant.   Complainants appeal.

*Reversed and remanded.*

The opinion states the case.

*N. T. Green,* for the appellants.

*Savage & Lawrence,* for the appellee.

CHINN, J., delivered the opinion of the court.

W. B. Frizzell, of Princess Anne county, died October 17, 1924, leaving a widow, Grace G. Frizzell, and a posthumous child, Cecil Harold Frizzell, born April 25, 1925.   By his will, dated February 15, 1924, said W. B. Frizzell devised and bequeathed to his nephew, Clarence G. Frizzell, all his real estate situated in Princess Anne county, consisting of two farms, and all horses, mules, live stock and farming implements and utensils that he owned at the time of his death.

After the birth of said posthumous child, who was and is the only child of the testator, this suit was brought by the widow, Grace G. Frizzell, in her own

right and as executrix of said will, and Cecil Harold Frizzell, by his mother and next friend, against Clarence G. Frizzell, to have the rights of the parties determined under the provisions of section 5242 of the Code, as amended by the Acts of 1924, page 459; and also asking, in behalf of the executrix, the aid and direction of the court in the administration of the estate. Clarence G. Frizzell, the appellee here, filed an answer and cross-bill in which he admits the birth of the posthumous child, but claims that he is entitled to all the property devised and bequeathed to him by the will, free from any right or claim on the part of such child, by virtue of a certain parol contract (set up in the cross-bill) by which testator promised and agreed to devise and bequeath him the said property; and also claims that the personal property was given and delivered to him by W. B. Frizzell in his lifetime.

Depositions were duly taken in behalf of the appellee, and upon the hearing of the cause the court sustained the contract set up by the cross-bill; decreed that Clarence G. Frizzell is entitled to receive, and is vested with title to, all the real estate and personal property devised and bequeathed him by the said will, and dismissed the bill as to him.  From that decree, complainants in the court below took this appeal.

The first and principal question presented by the record is whether the evidence is sufficient to justify the enforcement by a court of equity of the parol contract relied on by appellee to avoid the provisions of the statute above referred to; and it is clear that, in considering this question, the evidence must be looked at as if W. B. Frizzell had died without a will, and Clarence G. Frizzell were now here seeking specific performance of said parol contract against the heirs and personal representatives of W. B. Frizzell.

Without entering into unnecessary details it appears from the evidence that in the month of March, 1923,. at W. B. Frizzell's request, appellee "went to live with him," on one of his farms in Princess Anne county, for the purpose of assisting in the conduct of his farming operations. At that time W. B. Frizzell was a childless. widower, and appellee was working in Norfolk, but he gave up that employment in about two months and then received from W. B. Frizzell $50.00 per month for his services until the first of the following August.. On August 1, 1923, the above mentioned parties entered into a partnership agreement, whereby appellee gave his active services in running the farms, and W. B. Frizzell furnished his land, work team, live stock and farming implements to the partnership, with the understanding that the parties should each own one-half of the personalty and should participate equally in the profits and losses of the farming operations.

On February 6, 1924, W. B. Frizzell married Grace G. Frizzell, one of the appellants in this suit, and took his wife to his home in Princess Anne county, where appellee and his wife continued to live as before.

According to the substance of appellee's own testimony, on August 1, 1924, W. B. Frizzell having become in bad health and unable to do any physical labor, the partnership existing between them was dissolved, and they entered into a new verbal agreement, which is. stated in the cross-bill as follows:

"Your respondent further avers that in August, 1924,. your respondent entered into an agreement with the late William B. Frizzell whereby your respondent agreed from that time until the death of the late William B. Frizzell your respondent would board the late William B. Frizzell, and his wife, and would render to the said William B. Frizzell such aid and assistance,.

and give him such personal services and attention as
he might need on account of his physical condition,
and in consideration thereof, the late William B.
Frizzell gave and delivered to your respondent his
interest in the personal property consisting of the farm
utensils, horses, mules and other live stock on his
farms in Princess Anne county, as hereinabove set out,
and further agreed that at his death he, the said Wil-
liam B. Frizzell, would by his will give and devise to
your respondent the said farms owned by the said
William B. Frizzell in Princess Anne county, Virginia."

The cross-bill then proceeds to allege that appellee
fully performed his part of said agreement, and W. B.
Frizzell performed his part of the same by making the
promised devise.

It is contended by counsel for appellants that the
contract above set out, to the extent of the real estate
involved, comes within the provisions of section 5141
of the Code of Virginia, and is controlled by the in-
terpretation placed upon that statute in the case of
*Wohlford* v. *Wohlford*, 121 Va. 699, 93 S. E. 629.

The above mentioned statute, after providing that
no real estate shall be conveyed except by deed or
will, further provides as follows:

"Nor shall any right to a conveyance of any such
estate or term in land accrue to the donee of the land,
or those claiming under him, under a gift or promise
of a gift of the same hereafter made and not in writing,
although such gift or promise be followed by possession
thereunder and improvement of the land by the donee,
or those claiming under him."

In *Wohlford* v. *Wohlford, supra,* it was pointed out
by Judge Kelly, speaking for the court that:

[1] " 'Prior to May, 1888, the date upon which the
Code of 1887 took effect, a parol gift or a promise of a

gift of land, to be consummated by deed, if followed by improvements on the land, was enforceable under the doctrine of such cases as *Halsey* v. *Peters*, 79 Va. 60; and a contract for a gift to be perfected by will, under similar circumstances, was enforceable under the doctrine announced in *Burdine* v. *Burdine*, 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741. But in view of the history and apparent purpose of section 2413 of the Code of Virginia, which first made its appearance in the Code of 1887, no such contract is now enforceable.' ''

After stating the terms of the alleged contract in the case then under consideration, and holding that section 2413 of the Code of 1887 (section 5141 of the Code of 1919) ''was expressly designed to abolish the doctrine of *Halsey* v. *Peters* and other Virginia cases,'' Judge Kelly, later on in the opinion, says: ''The instant case presents no stronger facts upon which to claim that the gift was based upon a valuable consideration than did the case of *Halsey* v. *Peters*, and we think, therefore, it must be accepted as settled law in Virginia that contracts of the character here involved are expressly invalidated by the statute in question.''

From reference to the facts in *Halsey* v. *Peters* and *Wohlford* v. *Wohlford*, it is clearly evident that the doctrine of the latter case was intended to apply only to those cases in which the gift or promise of a gift is unsupported by a consideration, and not to those where there is such a consideration for the gift or promise as will allow the same to be treated in equity as a valid contract for the sale or devise of land.

[2] Since, therefore, a consideration is alleged for the promise sought to be enforced in the instant case, and there is some evidence tending to support that allegation, we do not think the contract now under considera-

tion comes within the inhibition of the above mentioned statute, as did the contract in *Wohlford* v. *Wohlford*, but it belongs to that class of cases to which the rules of law pertaining to the specific performance of contracts for the sale of land are applicable.

In *Burruss* v. *Nelson's Ex'r*, 132 Va. 17, 110 S. E. 254, where an aunt had agreed with her nephew that if he would care for her and manage her estate during her declining years, she would, upon her death, leave him a certain farm; and the plaintiff sought to have the agreement enforced, the court said:

[3] "The alleged contract was by parol. Its enforcement in equity depends upon clear and convincing proof.

[4, 5] "In *Plunkett* v. *Bryan*, 101 Va. 814, 818, 45 S. E. 742, 744, Judge Harrison, speaking for this court, said: 'The principles upon which a court of equity will avoid the statute of frauds and enforce a parol agreement for the sale of land are well settled. They are briefly but clearly stated in *Wright* v. *Puckett* [22 Gratt. (63 Va.) 370], *supra*, to be as follows: "1st. The parol agreement relied on must be certain and definite in its terms. 2nd. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. 3rd. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation. These requisites must concur before a court of equity will decree specific execution." The act or acts of part performance must be of such an unequivocal nature as of themselves to be evidence of the execution of an agreement. They must be such as could be done with no other view or design than to perform the agreement. They must unequivocally refer to and

result from an agreement and be such as the party would not have done unless on account of that very agreement, and with a direct view to its performance. The act must be sufficient of itself, without any other information or evidence to satisfy the court from the circumstances it has created, and the relations it has formed, that they are only consistent with the assumption of the existence of a contract, the terms of which equity will enforce. Until acts are alleged which, of themselves, imply the existence of such a contract, parol evidence to show its terms is inadmissible. *Frome* v. *Dawson*, 14 Ves. 387; *Maddison* v. *Alderson* (House of Lords), 8 App. Cas. 467; *Phillips* v. *Thompson*, 1 Johns. Ch. [N. Y.] 131; *Pierce* v. *Catron*, 23 Gratt. (64 Va.) 588; *Hale* v. *Hale* [90 Va. 728, 19 S. E. 739], *supra.*' "

[6] While the evidence adduced as to the existence of the alleged contract is not of the clear and convincing character to be desired in cases of this sort, it is unnecessary to discuss it with reference to that question; for if it be conceded that the existence and terms of the contract set up by appellee are satisfactorily proved, it is clear that the evidence fails to meet the foregoing requisites in other essential particulars.

It appears from the evidence that from the time appellee and his wife took up their abode with W. B. Frizzell, he received $50.00 per month for his services until August 1, 1923. From that date until August 1, 1924, appellee was compensated for such services as he rendered under a special partnership agreement in which no contract for the sale or devise of the farms was involved. The only agreement in which there appears to have been any consideration for W. B. Frizzell's promise to devise the farms to appellee is that of August 1, 1924, when appellee undertook to

board and take care of Mr. Frizzell and his wife until
his death, and these services constitute the only acts of
part performance which are, or can be, in any sense
relied on to take the alleged contract out of the statute
of frauds.

An examination of the evidence shows that the
"board" referred to consisted merely of furnishing food
for Mr. Frizzell and his wife; and the "care" expended
was only such usual and ordinary attention as any one
would be expected to render a sick relative living under
the same roof—especially when that roof was his own.
In reference to this subject Mrs. Clarence G. Frizzell
testified in effect that she and Mrs. Grace G. Frizzell
jointly looked after the housekeeping; "both did about
the same;" that Mr. Frizzell was in bed during the
two months preceding his death, and "we had to help
him up and down;" that he had a nurse part of the
time and she and her husband "helped to wait on him,
and his wife too." On the same subject appellee's
testimony was as follows:

"Q. State just what you did in the way of looking
after him?

"A. It is hard to do, Captain.

"Q. Well, state generally what you did.

"A. Well, I waited on him as best I could and what
I could do night and day. He was an invalid in bed
and for his wife and my wife and also myself and a
nurse he had for a month or two and did what I could
for him; went after medicine, gave him medicine, and
everything else I could do, got anything for him he
wanted.

"Q. Did you board him and his wife?

"A. I did."

[7] Considering the fact that appellee was at the
time making his home at Mr. Frizzell's house and had

the exclusive use and benefit of his farms and all his tangible personal property free of charge or rental, it is just as consistent to assume that the acts above described were performed in consideration of the benefits he was then receiving, as it is to assume that they were done in performance of an existing contract to devise the property to him. Certainly, these acts do not, of themselves, constitute satisfactory evidence of the execution of such an agreement; and cannot be said to be such acts as appellee "would not have done unless on account of that very agreement, and with a direct view to its performance."

[8] It is contended by counsel for appellee that a refusal of specific performance will operate a fraud on the appellee, and "place him in a situation that does not lie in compensation;" and this view was expressed by the trial court in its decree. We are unable to concur in this conclusion.

There is nothing so exceptional or peculiar in the character of the alleged acts of performance in this case that their pecuniary value may not be easily estimated. Mr. Frizzell lived less than three months after the alleged contract was made, and there is no good reason why appellee cannot be fairly and justly compensated, if necessary, for such personal services as he and his wife rendered in helping to nurse and wait on him during his last illness. The "board" and taxes also, if they can be considered as a part of the consideration for the alleged promise, can be readily computed in dollars and cents. These considerations alone are sufficient to bar specific execution of the alleged parol contract.

[9] That Mr. Frizzell wanted appellee to have the real and personal property referred to, at his death, we have no doubt. At the time he made his will he had

no children, had recently married the second time, and appellee was his favorite nephew; this desire on his part was, therefore, but a natural one. Neither have we any doubt that he promised appellee to will him the property, and that the latter had every reason to believe he would carry out that promise. But for the birth of the posthumous child the intentions of the testator and the expectations of appellee would have been consummated, and it is due to that event, coupled with the interposition of the statute, that they have been defeated. We must, however, interpret and apply the law as it is.

[10] It only remains to consider the question of title to the personal property bequeathed to appellee by the will, which he claims was given to him by W. B. Frizzell in his lifetime. It is contended by counsel for appellants that this gift is invalid under the provisions of section 5142 of the Code. As it appears that the gift or transfer was not in writing, and that the donor and donee were residing together at the time, we deem it only necessary to say, without discussion, that this contention should be sustained, and the property referred to dealt with by the court below according to the provisions of the statute relating to pretermitted children.

[11] Counsel asks in his petition for appeal that this court adjust and decree the respective equities of the parties under that statute, but as those questions did not arise in the trial court, by reason of its decree, and counsel for appellee does not undertake to deal with them in his brief, we do not consider they are now properly before us, and, therefore, refer them to the learned chancellor of the lower court for consideration.

For the foregoing reasons, we are of the opinion that the decree complained of should be reversed, and the cause remanded for further proceedings in accordance with the bill and other pleadings therein.

*Reversed and remanded.*