# Staunton

## MOLLIE L. MANN v. THAD G. MANN, ETC.

September 22, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*M. H. Honaker,* for the appellant.

*White, Penn & Stuart* and *Thos. C. Phillips,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

N. W. Mann, on January 14, 1929, executed a will devising to his wife, Mollie L. Mann, certain property, including 17 3/4 acres known as the Bailey tract; by deed dated March 8, 1929, in consideration of love and affection, he conveyed to her thirty acres known as the Mary E. Bailey tract. T. G. Mann, a younger brother, claims that under an agreement made with N. W. Mann he is the equitable owner of both of these tracts; that N. W. Mann died January 21, 1931, without having devised or conveyed the same to him, and that he has a right in these proceedings to compel the devisee and alienee of N. W. Mann to convey the said property to him.

The trial court sustained the contention of T. G. Mann as to the thirty acre tract, but denied his contention as to the 17 3/4 acres and held that title to the latter tract passed under the said will to Mollie L. Mann.

The incidents leading up to this litigation began in the year 1921, at which time N. W. Mann was about seventy-one years of age and childless. He owned and, with his wife, lived on a farm (not involved in this litigation) situated near Holston, in Washington county. For a number of years

he had owned the 17 3/4 acre tract, lying in the same county but situated several miles from his home place. In December, 1921, he purchased the Mary E. Bailey tract of thirty acres, lying near, but not adjacent to, the 17 3/4 acres, for which he paid $3,000, cash, and assumed the payment of a lien thereon for $4,298.

At this time, T. G. Mann owned several hundred acres of land in Saskatchewan, Canada, on which he lived and farmed. In the pleadings he alleges that "N. W. Mann commenced writing to your respondent urging him to return to Washington county and settle on this Bailey land, and stating that said land was fertile and well located and had upon it a comfortable residence, and if properly worked, would yield a comfortable living and considerable sums in addition, which could be applied upon the purchase thereof. Said N. W. Mann proposed to your respondent that if he would return to Washington county and settle upon said land and assist said N. W. Mann in paying for the said thirty acre tract then at the death of said N. W. Mann all of said Bailey land, including both the thirty acre tract and the 17 3/4 acre tract should go to your respondent."

It is further alleged that T. G. Mann, pursuant to this request, returned to Washington county with his entire family, moved on the Bailey place, made numerous improvements thereon, paid $1,604.97 on the purchase price, and otherwise assisted N. W. Mann by delivering to him part of the crops raised on the two tracts of land.

From these and other allegations in the pleadings, it appears that T. G. Mann bases his right to specific performance, or rather its equivalent, on a written promise.

The only written evidence introduced in support of these allegations consists of two letters from N. W. Mann dated December 13 and 21, 1921. In the first, N. W. Mann simply states that he had received no reply from T. G. Mann to a former letter, and relates the terms of the purchase and the bargain he had made in buying the thirty acres. The second letter states that he had received a letter from his

brother, that he was unable to buy another tract of land, and after discussing other matters, states: "If you are not in shape to do any thing I wont have any more money to pay for a year unless I buy more of the Bailey land. It costs so much for you to come down that amount would help*e* me considerable when the time comes—. To come & go Back would cost you a bout $250.00. Later they may be some changes But it seems gloomy at present. I will keep*e* you advised as to thing here— * * * Take your time in making your collections thing down her easy now."

There is no promise, expressed or implied, in either of these letters. T. G. Mann testified that prior to the receipt of the first letter he had received another communication from N. W. Mann asking whether or not he would come to Washington county and purchase an interest in the Bailey place, but it is conclusively shown by the testimony of T. G. Mann himself that no agreement was reached between the brothers prior to his moving his family to Washington county in December, 1922. These facts confine the consideration of this case to the enforcement of an alleged oral promise to convey land.

Prior to the adoption of section 2413 of the Code of 1887, section 5141 of the present Code, an oral promise to give or devise land, followed by possession and improvements, was sufficient to support a right to a conveyance of the same from the heirs or devisees of the donor, but since the adoption of this section such a promise must be in writing before it can be enforced. See *Nicholas* v. *Nicholas,* 100 Va. 660, 42 S. E. 669, 866; *Wohlford* v. *Wohlford,* 121 Va. 699, 93 S. E. 629; *Brooks* v. *Clintsman,* 124 Va. 736, 98 S. E. 742, 100 S. E. 394; *Frizzell* v. *Frizzell,* 149 Va. 815, 141 S. E. 868, 870; *Creed* v. *Goodson,* 153 Va. 98, 149 S. E. 509.

T. G. Mann contends that the promise to convey or devise the lands is supported by valuable consideration, and because of this fact the provisions of Code, section 5141 have no application. In support of this contention he quotes cer-

tain language from the opinions in the cases of *Wohlford* v. *Wohlford, supra,* and *Frizzell* v. *Frizzell, supra.*

■ If the oral promise to make the conveyance is supported by valuable consideration, it is a contract of sale and not a promise to give. Judge Chinn, in the opinion in the case of *Frizzell* v. *Frizzell, supra,* in dealing with a similar situation, had this to say:

"Since, therefore, a consideration is alleged for the promise sought to be enforced, * * * we do not think the contract now under consideration comes within the inhibition of the above mentioned statute (5141), as did the contract in *Wohlford* v. *Wohlford,* but it belongs to that class to which the rules of law pertaining to the specific performance of contracts for the sale of land are applicable." See, also, the case of *McLin* v. *Richmond,* 114 Va. 244, 76 S. E. 301.

■ The statute of frauds is a complete bar to the specific performance of a parol contract for the conveyance of land, unless the facts alleged and proven bring the case within the following well-established rules:

"(1) The parol agreement relied on must be certain and definite in its terms.

"(2) The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved.

"(3) The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation." *Wright* v. *Pucket,* 22 Gratt. (63 Va.) 370; *Henley* v. *Cottrell Real Estate Ins. & Loan Co.,* 101 Va. 70, 43 S. E. 191; *McFaddin* v. *McFaddin,* 143 Va. 90, 129 S. E. 248.

Applying these principles to the facts in the case at bar, it appears that the alleged contract was made in December, 1922, and its terms, as stated by T. G. Mann, were, "that I was to help him pay for this land, on which I gave him a check for eleven hundred and seventy-three dollars I

believe to make the next payment on this land, and I was to stay there and farm this land and keep up the place and help him pay for it. * * * I was to have the land at his death. * * * It's the Bailey property, but this land where I live was the land I was to pay it on, I to help pay out, the Rachel Bailey farm. * * * He included that (17 3/4 acres) in the deal if I would stay and help him pay out on the other."

The obligation which T. G. Mann undertook to perform in consideration of the promise to convey or devise was neither certain nor definite. That part of the consideration contained in the statement, "I was to stay and farm this land and keep up the place," is nothing more than is usually required by landlords leasing farming lands, and the other part of the consideration—i. e., "I was * * * to help him pay for it"—is about as uncertain and indefinite as a promise could well be.

"To sustain a bill for specific performance of an oral contract of purchase, the evidence must be clear, full, and free from suspicion. * * * It must also disclose the price to be paid; this being an essential element of the contract." *Pickens* v. *Stout,* 67 W. Va. 422, 68 S. E. 354, 358.

The testimony of T. G. Mann not only fails to show any definite amount agreed upon to be paid by him to his brother as consideration for conveyance of the land to him, but he did not know the balance owing by N. W. Mann, which he claims he was to help pay. In answer to the question, "You were to help him pay the balance on this land, and you didn't know how much that balance was?" he replied, "Didn't make any difference, sir, if he give it to me how much it might be." It, therefore, affirmatively appears from the record that neither party thought there was a binding contract between them, for N. W. Mann during his lifetime made other disposition of the property, and T. G. Mann construed the statements of N. W. Mann as a promise to make him a gift. The alleged agreement

is neither certain nor definite, and hence the first essential to establish the right to specific performance is lacking.

The acts relied upon to prove such part performance as would remove the bar of the statute of frauds (Code, §5561) are:

(a) That for the first year after moving upon the property, T. G. Mann delivered to N. W. Mann all the crops raised by him, except what was sufficient to maintain his family and his stock. There is no proof of the value of the farm produce raised on these two tracts of land by T. G. Mann during the first year of his tenancy. Indeed, possession of the 17 3/4 acres was not given him until a year, or more, after he had moved on the thirty acre tract. It is a matter of common knowledge that a tenant who late in December takes possession of a farm located in a section largely devoted to the raising of hay, grain, and the like crops, is not in a position during the first year to produce a large yield, as the seeding of these crops is usually done in the fall; so no special significance can be attached to the fact that the first year T. G. Mann delivered to N. W. Mann all the crops "except what was sufficient to maintain his family and his stock." It is established that during the remainder of the time that T. G. Mann has occupied these premises he has divided the crops with N. W. Mann, pursuant to an agreement which created the relationship of landlord and tenant between the parties.

(b) That he repaired the fences, did some ditching, and built a hog pen, garage, smokehouse and granary. There is no proof of the value of the improvements; the repairing of the fences, the ditching and draining of the land would seem to be as much for the benefit of the tenant as for the landlord. It is established that the lumber which was used in the various buildings mentioned was manufactured from standing timber on this tract or other lands owned by N. W. Mann; that N. W. Mann did not own an automobile and kept no hogs or meat on this place; that T. G. Mann did own an automobile and that all of the buildings men-

tioned were for his personal benefit, with the exception, perhaps, of the granary in which was stored grain owned by both parties. It seems fair to infer from the evidence that there were no extensive improvements, and that those made were built at comparatively little cost. It is not uncommon for tenants, with the permission of the landlord and at no expense to him, to erect buildings and hog pens of the character here described, from lumber furnished by the landlord.

The acts relied upon as part performance to take the contract from the inhibition of the statute of frauds must be consistent with no theory other than the existence of the alleged oral contract. The possession of the premises, the division of the crops, the improvements made, are all consistent with the relationship of landlord and tenant, and do not of themselves imply the existence of a parol contract of sale. *Wright* v. *Pucket, supra; Plunkett* v. *Bryant,* 101 Va. 814, 45 S. E. 742; *Venable* v. *Stamper,* 102 Va. 30, 45 S. E. 738; *Clinchfield Coal Co.* v. *Powers,* 107 Va. 393, 59 S. E. 370; *Knoff* v. *Grace,* 68 Colo. 527, 190 Pac. 526, 10 A. L. R. 1492.

(c) It is established that T. G. Mann delivered to N. W. Mann on March 19, 1923, the sum of $1,175.05 and on March 1, 1926, the sum of $431.92. It is claimed by T. G. Mann that he paid this money to his brother under that part of the alleged contract which stated that he would help his brother pay for the land. No written evidence was given by N. W. Mann as a receipt for or promise to repay these sums to T. G. Mann. It is claimed by Mollie L. Mann that her husband paid the interest on these sums by permitting T. G. Mann to occupy a house and have usufruct from some ten or twelve acres. This claim, however, is denied by T. G. Mann, as follows:

"Q. Didn't you pay in that money, those two large checks amounting to about $1,600.00, and were to hold it without interest for the occupancy of that house and ten or twelve acres of land adjoining it?

"A. No, sir.

"Q. Did N. W. Mann get anything from that ten or twelve acres of land?

"A. My assistance to help him pay for all that land."

This answer, in part, corroborates the testimony of Mollie L. Mann and others that there seem to have been separate arrangements between the parties as to the usufruct from this ten or twelve acres. Mollie L. Mann, as executrix, opposed the payment of the $1,604.97 by pleading the statute of limitations, but stated that in her own right she would not interpose this plea, and suggested that payment of the principal be made a charge upon the thirty acres.

There is strong evidence in the case to indicate that the $1,604.97 was treated as a loan between the parties, but even if it were not, the contract upon which T. G. Mann claims to have paid the money is not sufficiently certain and definite for a court of equity to decree specific performance thereof, or to compel those upon whom legal title has descended to convey the property.

There are other matters mentioned in the record and referred to in the briefs, but what we have said is sufficient to dispose of the case, and hence it is useless to prolong this opinion by discussing them.

For the reasons stated, so much of the decree of the trial court as granted specific performance of the alleged contract to T. G. Mann must be reversed; title to the thirty acres known as the Mary E. Bailey tract declared vested in Mollie L. Mann, by virtue of the deed of March 8, 1929; and, in accordance with the request of Mollie L. Mann, T. G. Mann will be permitted to recover the sum of $1,604.97, with interest thereon from the entry of the order in this court, and, by proper decree, the payment of this money will be made a charge upon the thirty acres.

*Reversed.*